UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

EUROPACIFIC ASSET MANAGEMENT
CORP.,

                Plaintiff,

        - against -                OPINION AND ORDER

TRADESCAPE, CORP. d/b/a TRADESCAPE,          03 Civ. 4556 (PKL)
INC. and/or TRADESCAPE.COM, INC.
and SOFTBANK FINANCE CORP.,

                Defendants.

-------------------------------------------------------------x

USDC S: ͨ ͨ͡
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11|24|ͼͼ

## APPEARANCES

FERBER FROST CHAN & ESSNER LLP
530 Fifth Avenue
New York, New York 10036
Gregory D. Frost, Esq.

Attorneys for Plaintiff


SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
James H. Carter, Esq.

Attorneys for Defendant Softbank Finance Corp.

**LEISURE, District Judge:**

This action has reached the point at which the Court must determine whether plaintiff's recalcitrance, repeated failures to appear at pre-trial conferences, and dilatory tactics rise to a level warranting involuntary dismissal pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff's original claims for breach of contract, tortious interference with contractual relations, and breach of fiduciary duty relating to a failed loan transaction were divided among three defendants. Two defendants now remain, since defendant Credit Suisse First Boston Corp.'s ("CSFB") motion to dismiss all of the claims against it was granted by Order dated March 2, 2005. However, a review of the history of the case reveals that plaintiff's claims have languished in an inchoate state for almost two years. Despite warnings from the Court, plaintiff has failed to effectuate service on defendant Softbank Finance Corp. ("Softbank") and neglected to advance its enforcement of a default judgment entered against defendant Tradescape, Corp. ("Tradescape"). Having carefully weighed the case law of the Rule 41(b) remedy, the Court hereby dismisses plaintiff's remaining claims with prejudice pursuant to Rule 41(b) for failure to prosecute them for the reasons set forth below.

## BACKGROUND

While the Court's July 25, 2005 Order outlined the facts pertinent to this order (July 25, 2005 Order), the Court is mindful of the need to provide a clear and complete record of its reasoning in deciding a Rule 41(b) motion[1] and, therefore, a detailed factual history of this case follows.

---

[1] The Second Circuit has made clear the benefit of understanding clearly a district court's reasoning: "'[A] decision to dismiss stands a better chance on appeal if the appellate court has the benefit of the district court's reasoning.'" Shannon v. Gen. Elec. Co., 186 F.3d 186, 194 (2d Cir. 1999) (citing Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996)).

Plaintiff, Europacific Asset Management Corp., a Republic of Panama corporation (Compl. ¶ 1), filed its complaint against Tradescape and CSFB on June 23, 2003, alleging claims for breach of contract against Tradescape (id. ¶¶ 20-22); and tortious interference with contractual relations (id. ¶¶ 23-28) and breach of fiduciary duty against CSFB (id. ¶¶ 29-31). On October 7, 2003, plaintiff filed an amended complaint against "Tradescape, Corp. d/b/a Tradescape, Inc. and/or Tradescape.com Inc.," CSFB, and Softbank, a Japanese corporation (Am. Compl. ¶ 4), re-alleging its claims from the original complaint, adding breach of contract (id. ¶¶ 35-40) and breach of good faith and fair dealing claims against CSFB (id. ¶¶ 41-46), and adding a breach of contract claim against Softbank (id. ¶¶ 47-52).

I.      Factual History

A.      Plaintiff's Failure to Serve Softbank with the Amended Complaint

Plaintiff has failed to effectuate service on Softbank for almost two years since filing the amended complaint on October 7, 2003. Plaintiff's counsel, Gregory D. Frost, Esq., first informed the Court at the second pre-trial conference on March 2, 2004—almost five months after filing the amended complaint—that the amended complaint had been provided to a process server, but that service would take an additional three to six months because Softbank is a foreign entity. On July 28, 2004, Mr. Frost failed to appear at the scheduled pre-trial conference.[2] Over six months after telling the Court that service would take an additional three to six months, on September 14, 2004, Mr. Frost informed the Court at a pre-trial conference that he would seek to serve process on Softbank's counsel in lieu of service on Softbank itself. Almost two months later, and more than one year after filing the amended complaint, Mr. Frost informed the Court, by letter dated November 9, 2004, that he had learned that Softbank had

---

[2] In light of his failure to attend, the conference was adjourned to September 14, 2004 and Mr. Frost was told to inform the Court by letter of the steps he had taken to advance plaintiff's claims against both defendants. Mr. Frost never provided the Court with such a letter.

2

been served process in another matter pending in the Southern District of New York[3] through service on the New York Secretary of State. (Letter from Gregory D. Frost, Esq. to the Court, Nov. 9, 2004.) He contacted Softbank's counsel in that case, James H. Carter, Esq., and asked if Mr. Carter would accept service on behalf of his client, but Mr. Carter declined. (Id.) Nonetheless, Mr. Frost decided to pursue the method of service on the New York Secretary of State. (Id.) The corresponding Affidavit of Service, which was filed with the Court on November 22, 2004, evidences service on (1) Softbank at a New York, New York address and (2) the New York Secretary of State (Aff. of Service), with instructions to serve Softbank at the New York, New York address (id. Ex.).

Mr. Carter wrote a letter to Mr. Frost, dated December 15, 2004, stating that he had reviewed the Affidavit of Service and that such services was improper because Softbank is a Japanese corporation without a New York office that is not registered to do business in New York. (Letter from James H. Carter, Esq., to Gregory D. Frost, Esq., Dec. 15, 2004.) Therefore, service pursuant to section 306 of New York's Business Corporation Law, which provides for service of process on the agent of a domestic or authorized foreign corporation in New York, is not proper and lawful. (Id.) Mr. Carter surmised that Mr. Frost had intended to perfect service according to section 307 of New York's Business Corporation Law, but that such service could not be effected because it did not, pursuant to Federal Rule of Civil Procedure 4(f), conform to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents (the "Hague Convention"). (Id.) He concluded by telling Mr. Frost that proper service could only be effected if it was made in conformance with the requirements of the Hague Convention. (Id.) Thereafter, at a pre-trial conference on December 16, 2004, Mr. Frost informed the Court of the

---

[3] MarketXT Holdings Corp. et al. v. Son et al., No. 04-2707 (Bankr. S.D.N.Y. filed Apr. 8, 2004).

3

service made, as well as his belief that Mr. Carter was incorrect in claiming service was improper.

Mr. Frost's second failure to appear at a pre-trial conference occurred on March 3, 2005. The conference was adjourned to March 8, 2005, but Mr. Frost failed to appear again, resulting in his third absence. That day, Mr. Frost told the Court by phone that, notwithstanding Mr. Carter's directions regarding proper service, he was resolute that service had been proper. At Mr. Frost's request, a schedule was set for plaintiff to file a motion to find Softbank in default for failure to respond to the summons and complaint served on the New York Secretary of State.

Thereafter, on March 15, 2005, Mr. Frost contacted Mr. Carter by letter, contesting both the legal and factual bases of Mr. Carter's December 15, 2004 letter, notifying Mr. Carter that he believed Softbank was in default, setting out the motion schedule to find Softbank in default, and threatening to move for Rule 11 sanctions if Mr. Carter declined to have Softbank accept process. (Letter from Gregory D. Frost, Esq., to James H. Carter, Esq., Mar. 15, 2005.) Mr. Carter responded by letter dated March 16, 2005, stating that, as he had already informed Mr. Frost in December 2004, Softbank had been served in the other Southern District of New York proceeding through the Hague Convention.[4] (Letter from James H. Carter, Esq., to Gregory D. Frost, Esq., Mar. 16, 2005.) In response, Mr. Frost told the Court that it would serve process on Softbank through the Hague Convention.[5] (Letter from Gregory D. Frost, Esq., to the Court, Mar. 14, 2005 (misdated).)

---

[4] Mr. Carter detailed to Mr. Frost that the complaint had been translated into Japanese and properly served in accordance with Japanese law. He went on to note that plaintiff had failed to attempt to serve Softbank for over a year after filing the action, and three months after he had informed Mr. Frost explicitly that service had been improper. (Letter from James H. Carter, Esq., to Gregory D. Frost, Esq., Mar. 16, 2005.)

[5] Mr. Carter's direction to Mr. Frost that service of process on an entity in a foreign country must be made pursuant to the Hague Convention was correct, see Fed. R. Civ. P. 4(f)(1), because both Japan and the United States are signatories to it, see Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 [hereinafter Hague Convention]. Mr. Carter told Mr. Frost that service on Softbank in the other proceeding had been proper. (Letter from James H. Carter, Esq.,

4

At the eighth pre-trial conference on July 11, 2005, after being told that Softbank still had not been served, the Court admonished Mr. Frost for his dilatoriness. In response, Mr. Frost explained that plaintiff was a difficult client that was not paying his fees and expenses in a timely manner. The Court informed Mr. Frost that it would issue an order directing him to take affirmative steps to advance his claims, which if disobeyed would result in dismissal of the case.[6]

Accordingly, the Court issued a July 25, 2005 Order directing plaintiff to "initiat[e] the procedure to serve Softbank or dismiss[] the action against it" by the next pre-trial conference on September 13, 2005. (July 25, 2005 Order.) On September 13, 2005, plaintiff presented the Court with an Affidavit, dated September 12, 2005 ("Frost Affidavit"), outlining the steps taken toward satisfying the July 25, 2005 Order's directives—namely, that he had received permission

to Gregory D. Frost, Esq., Dec. 15, 2004.) That service was effectuated through Article 5 of the Hague Convention, which employs service of translated papers upon a Central Authority who in turn serves the defendant. Hague Convention art. 5, 20 U.S.T. at 362. However, Mr. Frost's service of the summons and complaint on the New York Secretary of State for delivery to Softbank would have complied, arguably, with Article 10 of the Hague Convention had Mr. Frost directed the Secretary of State to mail the papers to Softbank at its actual address in Japan.

Article 10 of the Hague Convention states that, provided the "State of destination does not object," the Convention allows for three enumerated methods of service. Id. at art. 10. The second and third of those options have been objected to explicitly by Japan; however, the first, which allows for the "freedom to send judicial documents, by postal channels, directly to persons abroad," has not been objected to. See Hague Conference on Private International Law: Special Commission Report on the Operation of the Hague Service Convention and the Hague Evidence Convention, 28 I.L.M. 1556, 1561 (1989). The circuit courts of appeals are divided on whether a signatory's lack of objection to sub-section (a)'s grant of freedom to "send" judicial documents extends to "service" of process. While many courts have answered in the negative, see, e.g., Bankston v. Toyota Motor Corp., 889 F.2d 172, 173-74 (8th Cir. 1989), the Second Circuit has answered affirmatively, Ackermann v. Levine, 788 F.2d 830, 839-40 (2d Cir. 1986) ("Federal courts construing the Hague Convention have apparently consistently upheld mail service thereunder to defendants in, for example, Japan, which, like the United States, is a signatory to the Convention and has not objected to mail service under Article 10(a).")

That decision has been followed by this circuit's district courts, see, e.g., Papir v. Wurms, No. 02 Civ. 32732005, WL 372061, at *4 (S.D.N.Y. Feb. 15, 2005) ("Ackermann is the law of this Circuit . . . ."), and distinguished by this circuit's district courts, see Charas v. Sand Tech. Sys. Int'l, Inc., 90 Civ. 5638, 1992 WL 296406, at *8 (S.D.N.Y. Oct. 7, 1992) (Keenan, J.) ("Any dicta in Ackermann to the effect that service by mail on a Japanese citizen would be appropriate has been undermined by subsequent cases."), but it remains the only appellate authority on this issue.

Plaintiff's service on the Secretary of State, however, called for the papers to be forwarded to a New York office and not a Japanese office, so any application of Article 10 is moot. (Aff. of Service.) For the purposes of this Rule 41(b) analysis, plaintiff never offered anything to the Court to lead it to believe that service on the Secretary of State was done with the intent to comply with Article 10. This is further evidenced by plaintiff's willingness to change course and pursue service according to Mr. Carter's direction to mimic the Article 5 service made in the other pending action. In short, the ordinary diligence required to determine how service could be made was lacking.
[6] Mr. Frost told the Court that he would send a letter to his client, with a copy to the Court; however, the Court never received such a letter.

5

from plaintiff to serve Softbank (Frost Aff. ¶ 2), and had provided a process server with the papers to be served (id.). However, an attached letter from the process server stated that the documents had not been translated to Japanese pursuant to the process server's previous direction (id. Ex. A), the fees for service were required to be paid in advance, and a court order directing service was needed (id.; id. ¶ 2). Mr. Frost had neither drafted such an order for the Court's review, nor given his adversary a copy of the affidavit for his review. Given Mr. Frost's previous failings, coupled with the inadequacy of actions taken as described in the Frost Affidavit, the Court dismissed the case, *sua sponte*, noting defendant should not have to suffer because of plaintiff and its counsel's procrastination and neglect.

## B. Plaintiff's Failure to Proceed Against Tradescape

### 1. Plaintiff's Representations to the Court

Plaintiff's failure to proceed against Tradescape for over sixteen months has been equally egregious. The Court entered a default judgment against Tradescape at a May 6, 2004 hearing in which Tradescape failed to appear and show cause as to why a default judgment should not be entered against it after not answering the complaint. (May 6, 2004 Order.) That day, the Court referred the action to Magistrate Judge Frank Maas to conduct an inquest. Judge Maas issued a Scheduling Order on May 25, 2004, requiring plaintiff to send to Judge Maas, and serve on Tradescape, an inquest memorandum outlining its proposed findings of fact and conclusions of law, and plaintiff complied after being granted an extension.[7] (May 25, 2004 Order.)

Mr. Frost informed the Court at a September 14, 2004 pre-trial conference that an involuntarily bankruptcy had been filed against Tradescape, but claimed that the automatic stay imposed on claims against Tradescape pursuant to 11 U.S.C. § 362(b) would be lifted at the end of the month and plaintiff might then be able to proceed. At the next conference on December

---

[7] Plaintiff requested an extension to July 5, 2004 on June 28, 2004, one day before the memorandum was due.

6

16, 2004, Mr. Frost told the Court that Tradescape was in voluntary bankruptcy and that plaintiff would be joining the unsecured creditors' committee.[8] The Court told Mr. Frost to update the Court by letter regarding Tradescape, but the Court did not hear from Mr. Frost until March 8, 2005, when the Court spoke to him by phone after he had missed both the March 3 and March 8, 2005 conferences. Mr. Frost told the Court in that phone call that there had been no decision to lift the stay imposed on plaintiff's claim. Over four months later, at a conference on July 11, 2005, Mr. Frost told the Court that he had tried, but failed, to join the unsecured creditors' committee in Tradescape's bankruptcy proceeding.[9]

At the September 13, 2005 conference, Mr. Frost presented the Court with the Frost Affidavit (Frost Aff.) in response to the July 25, 2005 Order's instruction to "proceed[] against Tradescape either through the Court Ordered inquest, by transferring or by dismissing the action." The Frost Affidavit stated that Mr. Frost (1) had, after previously contacting Judge Maas's chambers, sent a letter to Judge Maas on September 1, 2005 requesting a new inquest scheduling order (id. ¶ 3, Ex. B); and (2) contacted the trustee's counsel in the Tradescape bankruptcy proceeding on September 1, 2005 to advise it of the inquest (id. ¶ 4), and that trustee's counsel, by letter dated September 9, 2005, told Mr. Frost that the stay was still in place and the trustee was unwilling to modify or terminate it (id. ¶ 5, Ex. C). Mr. Frost requested an extension of time to contest the trustee's position in bankruptcy court at least to the extent to permit plaintiff to conduct the inquest. The Court admonished Mr. Frost for waiting until

---

[8] Mr. Frost also told the Court that he did not know whether the entity plaintiff had a default judgment against— "Tradescape Inc. d/b/a Tradescape, Inc. and/or Tradescape.com, Inc."—had been brought into the bankruptcy proceeding, or whether it only involved the parent company. The bankruptcy proceeding named as debtor "MarketXT Holdings Corp. a/k/a Tcorp Technologies, LLC, Tradescape Corp., and Tradescape.com, Inc.," which included all affiliates of MarketXT Holdings Corp.

[9] Mr. Frost also told the Court that he had been contacted by new counsel regarding resolving or transferring the case, but had not taken any further action.

7

September 1, 2005, to contact Judge Maas regarding the inquest, and then dismissed the claim against Tradescape, *sua sponte*.

## 2. Procedural History of the Tradescape Bankruptcy Proceeding

A petition for Tradescape's involuntarily bankruptcy was filed on March 26, 2004, and that chapter 7 bankruptcy was later converted to a chapter 11 bankruptcy by Order dated December 2, 2004. (Dec. 2, 2004 Order.) While Mr. Frost informed the Court on September 14, 2004 of the involuntary bankruptcy proceeding, the Court does not know when Mr. Frost had been put on notice of the proceeding and, specifically, whether he knew prior to informing the Court in September 2004. Mr. Frost's representations at the September 2004, December 2004, and July 2005 conferences that he would be joining the unsecured creditors' committee never materialized. The United States Trustee presiding over the proceeding advised Tradescape's largest unsecured creditors, including plaintiff, by letter dated December 7, 2004, that an organizational meeting would take place on December 16, 2004.[10] (Letter from Deirdre A. Martini, United States Trustee, to the Largest Unsecured Creditors of MarketXT Holdings Corp., In re MarketXT Holdings Corp. et al., No. 04-12078 (Bankr. S.D.N.Y. filed Mar. 26, 2004).) Plaintiff neither attended the organizational meeting, nor submitted an application to the Trustee in response to the Trustee's letter.

On March 8, 2005, Mr. Frost told the Court that there had not been a decision to lift the automatic stay with respect to plaintiff's claim. A review of the bankruptcy proceeding docket reveals that plaintiff never filed a motion to modify the stay pursuant to 11 U.S.C. § 362(d). (In re MarketXT Holdings Corp. et al., No. 04-12078 (Bankr. S.D.N.Y. filed Mar. 26, 2004).) Indeed, the docket reveals that plaintiff never filed a proof of claim in the proceeding at all. (Id.)

---

[10] Tradescape's December 3, 2004 List of Creditors Holding 20 Largest Unsecured Claims listed plaintiff as the largest unsecured creditor with its Disputed $37 million claim.

8

Finally, the trustee's counsel's letter to Mr. Frost, dated September 9, 2005, further illuminates plaintiff's inaction. The trustee's counsel's letter states that, based on materials Mr. Frost had forwarded to him, "[i]t appears that your client intends to proceed with the referenced district court action despite the application of the automatic stay to that matter under 11 U.S.C. § 362(b)." (Frost Aff. Ex. C.) He then states that the stay prohibits Mr. Frost from proceeding with plaintiff's action, and that the trustee will not consent to modifying or terminating the stay. (Id.)

## DISCUSSION

### I.    Involuntary Dismissal Standards

A defendant's right to move for the involuntary dismissal of a case for lack of prosecution is codified in Federal Rule of Civil Procedure 41(b).[11]  While the rule's text does not articulate a district court's right to order such a dismissal *sua sponte*, that right—developed since through case law—is now "unquestioned." LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 209 (2d Cir. 2001) (citing Link v. Wabash R.R. Co., 370 U.S. 626, 630 (1962)); see Theilmann v. Rutland Hosp., Inc., 455 F.2d 853, 855 (2d Cir. 1972) (per curiam) (citing Link, 370 U.S. at 630-31). What underlies the need for the rule is the Supreme Court's recognition that it "is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." Link, 370 U.S. at 629-30.  The necessity of the rule, though, is tempered by a corresponding recognition that the courts have a strong interest in allowing plaintiffs the ability to have their claims tried on the merits. Pecarsky v.

---

[11]  The text of the Rule is as follows:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

Fed. R. Civ. P. 41(b).

9

Galaxiworld.com Ltd., 249 F.3d 167, 172 (2d Cir. 2001) ("This Court has held that '[s]trong public policy favors resolving disputes on the merits.'") (citation omitted) (bracket in original); Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995) ("This Court has expressed on numerous occasions its preference that litigation disputes be resolved on the merits."). Indeed, the Second Circuit has made clear that the involuntary dismissal of a case with prejudice is "'a harsh remedy to be utilized only in extreme situations.'" Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 42 (2d Cir. 1982) (citing Theilmann, 455 F.2d at 855).

With this precaution in mind, the Second Circuit has directed its district courts to balance the following five factors when deciding whether a case should be involuntarily dismissed: (1) the duration of plaintiff's failures, (2) whether the court gave notice to plaintiff that further delays would result in dismissal, (3) the likelihood of prejudice to the defendant by further delay, (4) whether the district judge has balanced the need to alleviate court calendar congestion with protecting a party's right to due process and a fair chance to be heard, and (5) the efficacy of lesser sanctions. Shannon v. Gen. Elec. Co., 186 F.3d 186, 193-94 (2d Cir. 1999) (citing Nita v. Conn. Dep't of Envtl. Prot., 16 F.3d 482, 485 (2d Cir. 1994)); Lukensow v. Harley Cars of New York, 124 F.R.D. 64, 66 (S.D.N.Y. 1989) (Leisure, J.). No single factor is dispositive, see Shannon, 186 F.3d at 194, and, ultimately, the Second Circuit will review the record as a whole to determine whether dismissal was proper, United States ex rel. Drake v. Norden Sys. Inc., 375 F.3d 248, 254 (2d Cir. 2004).

A.    Duration

This first factor is comprised of two questions: "(1) whether the failures to prosecute were those of the plaintiff[] and (2) whether these failures were of significant duration." Id. at 255 (citing Martens v. Thomann, 273 F.3d 159, 180 (2d Cir. 2001)); Spencer v. Doe, 139 F.3d

10

107, 113 (2d Cir. 1998); Samman v. Convers, No. 02 Civ. 5073, 2005 WL 1414393, at *2 (S.D.N.Y. May 5, 2005) (citing Spencer, 139 F.3d at 113).

The first question asks whether any or all of the delays are attributable to the defendant as opposed to the plaintiff. See Jackson v. City of New York, 22 F.3d 71, 75 (2d Cir. 1994) (finding the durational element of the test not met where delays were as attributable to defendant as to plaintiff). Here, neither defendant has caused any delays. For the purposes of this analysis, delays are viewed as being caused by plaintiff's "side as a whole," such that a plaintiff's failings are imputed to its attorney and vice versa. Drake, 375 F.3d at 255. Consequently, a plaintiff cannot escape responsibility for failing to prosecute his claim even if his attorney is the source of the delay. See Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962) (holding that where a plaintiff chooses his attorney, "he cannot . . . avoid the consequences of the acts or omissions of this freely selected agent"); Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 666 (2d Cir. 1980) (Kaufman, J.) (citing United States v. Cirami, 563 F.2d 26, 35 (2d Cir. 1977) ("[A]bsent a truly extraordinary situation, the client is not excused from the consequences of his attorney's nonfeasance."). Here, delays were caused by plaintiff's "side as a whole"—plaintiff cannot avoid the consequences of its counsel's inability to attend the Court's scheduled conferences and proceed in a timely fashion against Softbank and Tradescape, and Mr. Frost cannot shirk his duties to the Court because of his client's inability to pay timely his fees and expenses.

The second question, of course, looks to the length of the delay. It is unquestioned that an "unreasonable" delay in serving process can constitute a failure to prosecute. See Krank v. Express Funding Corp., 133 F.R.D. 14, 18 (S.D.N.Y. 1990) (citing Saylor v. Lindsley, 71 F.R.D. 380, 383 (S.D.N.Y. 1976)); In re Crysen/Montenay Energy Co., 166 B.R. 546, 551 (S.D.N.Y. 1994) (Leisure, J.) (citing Krank, 133 F.R.D. at 18). While there is no fixed time after which a

11

delay becomes "unreasonable," courts have held frequently that certain delays of less than two years are unreasonable. See, e.g., Drake, 375 F.3d at 255 (seventeen-month delay in filing amended complaint); Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 666 (2d Cir. 1980) (Kaufman, J.) (six-month delay in which plaintiff failed to prosecute his case); Ali v. A & G Co., 542 F.2d 595, 596 (2d Cir. 1976) (two-month delay in notifying court that discovery was not completed, and failure to appear for trial); Samman v. Conyers, No. 02 Civ. 5073, 2005 WL 1414393, at *2 (S.D.N.Y. May 5, 2005) (almost two year-delay in advancing discovery); In re Crysen, 166 B.R. at 551 (fourteen-month delay in applying to proceed via letters rogatory and more than six-month delay in subsequent service on deponent); Lukensow v. Harley Cars of New York, 124 F.R.D. 64, 66 (S.D.N.Y. 1989) (Leisure, J.) (two-year delay with no prosecutorial effort); see also Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 42-43 (2d Cir. 1982) (noting that dismissal has been warranted in instances where dilatory tactics go on for a matter of months or over a period of years).

In this Circuit, otherwise lengthy delays may not be dismissed where a plaintiff has a reasonable excuse for the delays. See Romandette v. Weetabix Co., 807 F.2d 309, 312 (2d Cir. 1986) (delay excusable where *pro se* inmate-plaintiff was transferred to a facility lacking the legal resources needed to pursue his claim); Saylor v. Bastedo, 623 F.2d 230, 239 (2d Cir. 1980) (Friendly, J.) (finding that where there was "blame enough . . . for everyone," such blame should not "all have been laid at the door of plaintiff's present counsel"); Krank v. Express Funding Corp., 133 F.R.D. 14, 18 (S.D.N.Y. 1990) (delay excusable, and thus due diligence not lacking, where pro se plaintiffs made good faith effort to effectuate service properly after having been notified that prior service was defective); Preston v. Mendlinger, 83 F.R.D. 198, 200 (S.D.N.Y.

1979) ("[A] delay of approximately two years is not so inherently prejudicial that it requires dismissal without consideration of other factors.").

In Preston, for instance, dismissal was unwarranted where, during an approximately two-year delay, plaintiffs made a good faith effort to serve the defendants, 83 F.R.D. at 200, and took other affirmative steps in advancing the case, id. at 201. Similarly, in Martens v. Thomann, 273 F.3d 159, 180-81 (2d Cir. 2001), where plaintiffs had bona fide reasons for not prosecuting their claims for fifteen months, they were not "culpably inactive" and dismissal was thus not warranted.

Whether plaintiff's unreasonably lengthy delays in this case are nonetheless excusable thus turns on whether plaintiff has offered bona fide reasons or explanations for those delays. Unlike the plaintiffs in Preston and Martens, however, plaintiff here has failed to produce any such reasonable explanations. The only explanation offered by Mr. Frost is that his client, who he alleged did not pay him in a timely manner, has impeded his ability to prosecute the action. This explanation falls on deaf ears, as counsel is not excused from prosecuting his client's case unless and until he withdraws his representation. Indeed, the Court reminded Mr. Frost at the July 11, 2005 conference that he could file a motion to withdraw his representation of plaintiff. Moreover, Mr. Frost's explanation fails to excuse or even explain his inability to comply with the requirements of Federal Rule of Civil Procedure 4(f) for service on a foreign entity.[12]

Mr. Frost offered no explanation for failing to serve Softbank within the first year following his filing of the complaint. After the one-year mark had passed, Mr. Frost served the

---

[12] Rule 4(f) provides for service of process upon individuals in foreign countries. The provision allows, in the alternative, for service "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents," Fed. R. Civ. P. 4(f)(1), or, in the event there is no such internationally agreed upon means of service or the applicable international agreement allows other means of service, by, among other enumerated options, service that is reasonably calculated to give notice in accordance with the foreign country's law, id. at 4(f)(2)(A).

13

New York Secretary of State with the summons and complaint. As noted in Mr. Carter's December 2004 letter, such service seemingly was meant to comply with section 307 of New York's Business Corporation Law, which would have been a proper method of service pursuant to Federal Rule of Civil Procedure 4(e) if Softbank were located in New York.[13] While the Court might look past a party's good faith, but mistaken, belief that a defendant is located in a certain jurisdiction, it may not excuse such a belief where it is borne from an unwillingness to inquire diligently as to the party's location. Mr. Frost's repeated explanation for attempting to serve Softbank as it did was that Softbank had been so served in another action in the Southern District of New York. (Mr. Frost never communicated to the Court that he came to believe Softbank was located in New York for jurisdictional purposes because of an independent inquiry into Softbank's business operations.) However, that belief was premised on a misreading of an Affidavit of Service in another action in which plaintiff believed Softbank had been served through the New York Secretary of State. Only after Softbank's counsel told Mr. Frost for the second time that Softbank was not located in New York and only could be served in accordance with the Hague Convention did Mr. Frost so proceed. Six months later, the only step taken toward effecting service through the Hague Convention was preliminary contact with a process server concerning service.

Plaintiff similarly has failed to offer any reasonable excuse for not advancing its action against Tradescape. For over sixteen months, plaintiff did not file a claim of proof in the bankruptcy proceeding, and never informed the Court of this fact. While plaintiff was not obligated to file such a claim, it was obligated to inform the Court of its actions and dismiss or transfer its action if it had no intent to proceed. The failure to move its action in sixteen months

---

[13] Rule 4(e)(1) allows for service upon an individual within a judicial district of the United States "pursuant to the law of the state in which the district court is located . . . ." Id. at 4(e)(1).

is indefensible, as is its failure to inform the Court accurately about the status of the bankruptcy proceeding. Plaintiff told the Court inaccurately that the automatic stay in the bankruptcy proceeding would be lifted in September 2004. Plaintiff also told the Court that it would seek to join the unsecured creditors' committee, yet its failure to reply to the Trustee's invitation to attend the committee's organizational meeting belies this assertion. While plaintiff was allowed to change its mind and not pursue joining the unsecured creditors' committee, it never articulated to the Court whether this was the case. Most importantly, Mr. Frost's correspondence with the trustee's counsel, Leslie S. Barr, Esq., in September 2005 evidences either an ignorance of the status of the bankruptcy proceeding, or a misunderstanding of how it affected plaintiff's action. Mr. Frost provided to the bankruptcy trustee's counsel those documents it intended to provide to Judge Maas for an inquest. The trustee's counsel, Leslie S. Barr, Esq., replied to Mr. Frost, explaining that plaintiff could not proceed with its action because the automatic stay precluded it from doing so, and the trustee declined to grant a modification or termination of the stay. Either plaintiff was unaware that the automatic stay was still in effect, or it knew that the stay was in effect but did not understand that the stay barred its action. Because plaintiff has failed to explain these failings, the sixteen-month delay is found to be "unreasonable" and the durational element is met. See West v. City of New York, 130 F.R.D. 522, 526 (S.D.N.Y. 1990) ("'[P]laintiff has set forth no factors which would support a finding that the neglect was 'excusable.'"" (quoting Charles Labs, Inc. v. Banner, 79 F.R.D. 55, 57 (S.D.N.Y. 1978))).

B.    Notice

A district court must consider whether a plaintiff received notice that further delay would result in dismissal. Peart v. City of New York, 992 F.2d 458, 462 (2d Cir. 1993) (citing Romandette v. Weetabix Co., 807 F.2d 309, 312 (2d Cir. 1986)). A court's prior warning of

15

dismissal, and subsequent inaction by a plaintiff, weighs in favor of dismissal. See, e.g., Shannon v. Gen. Elec. Co., 186 F.3d 186, 194 (2d Cir. 1999) (holding noncompliance with a notice to file an affidavit explaining why plaintiff's action should not be dismissed weighs in favor of dismissal); Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993) (stating that dismissal was not warranted where there was a "lack of notice to plaintiff that her action would be dismissed"). However, a court is not required to give notice to a party that its claim(s) face dismissal. See Lukensow v. Harley Cars of New York, 124 F.R.D. 64, 66 (S.D.N.Y. 1989) (Leisure, J.) ("[T]here is no requirement that prior notice of the dismissal be given." (citing Link v. Wabash R.R. Co., 370 U.S. 626, 633 (1962))). Because plaintiff was put on explicit notice by the court's July 25, 2005 Order to "initiat[e] the procedure to serve Softbank or dismiss[] the action against it" and "proceed[] against Tradescape either through the Court Ordered inquest, by transferring or by dismissing the action," this element is met. See Shannon, 186 F.3d at 194 (stating written notice giving plaintiff over two months to file an affidavit explaining why action should not be dismissed satisfies notice element of test); Peart v. City of New York, 992 F.2d 458, 462 (2d Cir. 1993) (holding oral notice at conference that failure to appear for trial on prescribed date would result in dismissal satisfies notice element). Plaintiff's feeble attempts to comply with the July 25, 2005 Order, like those preceding the issuance of that Order, are unsatisfactory and have failed to advance the case in any meaningful way.

C. Prejudice

Dismissal is also favored when, as a result of plaintiff's delays, the defendant is prejudiced. Where, as here, the delay is unreasonable, prejudice may be presumed as a matter of law. Peart, 992 F.2d at 462 (citing Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir. 1982)); see also Shannon, 186 F.3d at 195 ("A presumption of prejudice is particularly

16

appropriate where . . . the plaintiff's delay was prolonged."). The probability of prejudice to a defendant that has not been served process for a particularly long period of time is high. Preston v. Mendlinger, 83 F.R.D. 198, 199 (S.D.N.Y. 1979) (citing Finley v. Parvin/Dohrman Co., 520 F.2d 386, 391 (2d Cir. 1975)). The consideration of prejudice to a defendant is viewed in light of the maxim that "[t]he operative condition of . . . Rule [41(b)] is lack of due diligence on the part of the plaintiff—not a showing by the defendant that it will be prejudiced by denial of its motion." Messenger v. United States, 231 F.2d 328, 331 (2d Cir. 1956). The need to show actual prejudice may be considered "in cases of moderate or excusable neglect." Id. at 331; see also Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir. 1982) (citing Messenger, 231 F.2d at 331). Here, prejudice to the defendants is presumed because plaintiff's neglect was neither moderate, see Stoenescu v. Jablonsky, 162 F.R.D. 268, 271 (S.D.N.Y. 1995) (Sprizzo, J.) (presuming prejudice to defendants where pro se plaintiff failed to prosecute her action for twenty-one months, including a failure to appear at two pre-trial conferences); Charles Labs, Inc. v. Banner, 79 F.R.D. 55, 57 (S.D.N.Y. 1978) ("I do not consider 18 months' delay moderate."); West v. City of New York, 130 F.R.D. 522, 526 (S.D.N.Y. 1990) (quoting Banner to hold that a nineteen-month delay without plaintiff taking any specific or concrete action was not moderate), nor excusable, as discussed above.

## D.     Balancing of Calendar Congestion Against Plaintiff's Right to Due Process

The fourth factor considers whether a district court has struck a "balance between district court calendar congestion and the plaintiff's right to an opportunity to be heard." United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 257 (2d Cir. 2004) (citing Martens v. Thomann, 273 F.3d 159, 182 (2d Cir. 2001)). The Second Circuit recognizes that "[t]here must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard

17

is subrogated to the convenience of the court," Lucas v. Miles, 84 F.3d 532, 535-56 (2d Cir. 1996); however, "[f]airness to other litigants, whether in the same case or merely in the same court (as competitors for scarce judicial resources)," Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 668 (2d Cir. 1980) (Kaufman, J.), mandates, "on rare occasions," that a court deprive a plaintiff "of his right to a trial on the merits," id. In Chira, the Second Circuit affirmed the dismissal of plaintiff's various claims[14] where he failed to appear at his deposition and then refused to answer over 120 questions at a rescheduled deposition, filed a motion that was found to be frivolous, failed to respond fully to document requests, failed to complete his own discovery within the court's six-month deadline, and "did absolutely nothing at all to move [his] case to trial" within the same six-month period. Id. at 666. Plaintiff's behavior in this action at least equals, if not goes beyond, that of the plaintiff in Chira.[15] Plaintiff's counsel failed to (1) attend three pre-trial conferences, (2) understand how Softbank could be properly served under the Federal Rules, notwithstanding Softbank's counsel's explicit directions to him, (3) file a claim against Tradescape or seek to join the unsecured creditors' committee, and (4) provide the Court with updates requested by the Court and promised to be provided by plaintiff. Given these failures, this is such a case where the plaintiff can be deprived of a trial on the merits because of plaintiff's own actions. Indeed, where a plaintiff could have avoided dismissal by pressing its claim(s), "there can be no claim by plaintiff[] that [its] due process rights have been denied." Lukensow v. Harley Cars of New York, 124 F.R.D. 64, 67 (S.D.N.Y. 1989) (Leisure, J.) (finding no denial of due process where there was a complete lack of prosecutorial activity for two years);

---

[14] The plaintiff's claims were for

> fraud, breach of contract, wrongful discharge, tortious interference with career opportunities, defamation of his professional reputation, harassment, intentional infliction of emotional distress, and job discrimination on the basis of age (Chira was 45), marital status (he is single), ethnic background (he is of Arab descent), and medical condition.

Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 666 (2d Cir. 1980) (Kaufman, J.).

[15] The Court notes that plaintiff's inaction against Softbank has prohibited the Court to even proceed to discovery, the procedural phase in which the Chira action was dismissed.

see Feurtado v. City of New York, 225 F.R.D. 474, 480 (S.D.N.Y. 2004) (holding that unfairness to other litigants outweighed plaintiff's right to a trial on the merits where plaintiff refused to comply with the court's directives and failed generally to prosecute his action); Dodson v. Runyon, 957 F. Supp. 465, 470 (S.D.N.Y. 1997) (plaintiff's failure to conduct discovery for almost two and one-half years was "of his own making" and therefore his due process rights were not violated), aff'd, 152 F.3d 917 (2d Cir. 1998).

E.    Lesser Sanctions

A district court must consider whether sanctions less severe than dismissal would be effective. Shannon v. Gen. Elec. Co., 186 F.3d 186, 196 (2d Cir. 1999). Both the plaintiff and its lawyer's actions must be considered:

> When the district court considers the appropriate sanction for failure to prosecute an action, the more the delay was occasioned by plaintiff's personal obstruction, or was designed to benefit the plaintiff's strategic interests, the more suitable the remedy of dismissal. Conversely, the more the delay was occasioned by the lawyer's disregard of his obligation toward his client, the more this factor argues in favor of a less drastic sanction imposed directly on the lawyer.

Dodson v. Runyon, 86 F.3d 37, 39 (2d Cir. 1996), cert. denied, 520 U.S. 1156 (1997).

While Mr. Frost appears to be the primary source of inaction, he has told the Court on multiple occasions that his representation has been hamstrung by plaintiff's inability to communicate timely with him and pay his legal fees on time. The Court took note of Mr. Frost's frustration with his client at a pre-trial conference and openly contemplated sanctioning the client, but concluded that the history of the case, combined with the notice of dismissal and unexplainable delays, would render any lesser sanction pointless. See Dodson, 957 F. Supp. 465, 470 (S.D.N.Y. 1997). As noted above, "'[t]he primary rationale underlying dismissal under [Rule] 41(b) is the failure of plaintiff in his duty to process his case diligently.'" Id. (citing Lyell Theatre Corp., 682 F.2d at 43). The Supreme Court has held that where a plaintiff has chosen his

19

counsel voluntarily, "he cannot . . . avoid the consequences of the acts or omissions of this freely selected agent." Link, 370 U.S. at 633. As noted above, plaintiff's counsel is not alone at fault for the delay in this case. Indeed, Mr. Frost frequently pointed to payment and communication difficulties with his client to explain his delays. See Dodson, 957 F. Supp. at 471. Most importantly, the prior warning of dismissal and admonishment of plaintiff's counsel for his series of failures to attend pre-trial conferences and advance his client's claims have been ineffective in motivating him to change his ways. See Samman v. Conyers, No. 02 Civ. 5073, 2005 WL 1414393, at *4 (S.D.N.Y. May 5, 2005) (holding that where prior warnings of dismissal and extensions of discovery deadlines do not result in better conduct, dismissal is favored). Given both plaintiff and its counsel's failures, lesser sanctions would be inadequate.

### CONCLUSION

For the foregoing reasons, plaintiff's claims against defendants Softbank and Tradescape are hereby dismissed with prejudice.

**SO ORDERED.**
**New York, New York**

November **28**, 2005

_____
U.S.D.J.

20

Copies of this Order have been sent to:

Gregory D. Frost, Esq.
Ferber Frost Chan & Essner LLP
530 Fifth Avenue
New York, NY 10036

James H. Carter, Esq.
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Magistrate Judge Frank Maas
United States District Court
500 Pearl Street
New York, NY 10007